UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| ELLISON FRAMING, INC., | No.  CIV. S-11-0122 LKK/DAD |
|---|---|
| Plaintiff, | No. CIV. S-13-1761 JAM/AC |
| v. | **ORDER** |
| ZURICH AMERICAN INSURANCE COMPANY, | |
| Defendant. | |

    Plaintiff Ellison Framing, Inc. simultaneously filed a new complaint in this action, without leave of court and in apparent violation of a stay order, as well as in a new case, which was assigned to the Hon. John A. Mendez. Defendant Zurich American Insurance Company now moves to (i) consolidate the two cases in this court, (ii) strike the new complaint, and (iii) enforce the standing arbitration order.

    Zurich's motions came on for hearing on December 9, 2013. Having considered the matter, the motions will be granted, for the reasons set forth below.

1

**I.     MOTION TO CONSOLIDATE**

Zurich moves to consolidate the action pending before Judge Mendez with the existing action in this court.

### A. Background re: Motion to Consolidate
### 1. 2011 Complaint

On January 6, 2011, Ellison commenced the instant action by filing a complaint in Sacramento County Superior Court, case no. 34-2011-00094691 ("2011 Complaint"). One week later, Zurich removed the action to this court.

The 2011 Complaint concerns certain disputes over a Workers Compensation insurance policy that Ellison obtained from Zurich. On November 15, 2010, Ellison had filed a complaint with the California Department of Insurance regarding $195,000.00 in "cost containment" fees that it claimed Zurich had improperly charged it. (Complaint ¶ 5, ECF No. 1.) Approximately one month later, Zurich made an arbitration demand, alleging that Ellison owed it $569,640.97 in unpaid deductibles, pursuant to "deductible agreements"[1] between the parties; relevant clauses in these

---

[1] According to an exhibit filed by Zurich: "A workers' compensation large deductible agreement . . . is an agreement in which an insurer is obligated to pay workers' compensation insurance benefits to claimants . . . but as between the insurer and the insured, the insured agrees to bear the risk of loss within a specified amount per claim or per occurrence. Under an LDA, the insured agrees to reimburse or otherwise pay the insurer for claims payments made by the insurer, typically up to an aggregate cap. The insured may also agree to reimburse or otherwise pay the insurer for loss adjustment expenses and/or other claims or policy related expenses. The amounts that the insured agrees to reimburse or pay are substantial, often equaling 100% of the amounts paid by the insurer to satisfy workers' compensation insurance claims." (Notice of Hearing and Order to Show Cause re Issuance of Orders 4-5, Decl. Dow Exh B., ECF No. 26-2.)

agreements identified Schaumburg, Illinois as the arbitral venue and specified that the arbitration would be governed by New York state law. After considering Zurich's arbitration demand, the American Arbitration Association ("AAA") determined that the arbitration would be conducted in Schaumburg. In the 2011 Complaint, Ellison sought compensatory damages of $195,000.00, and declaratory and injunctive relief regarding the purported unconscionability of the arbitration provision.

Upon removal to this court, Zurich filed a motion to stay the action and compel arbitration pursuant to the Federal Arbitration Act, 9 U.S.C. § 1 *et seq.* ("FAA"). (ECF No. 5.) After hearing, the court granted Zurich's motion. See <u>Ellison Framing, Inc. v. Zurich Am. Ins. Co.</u>, 805 F. Supp. 2d 1006 (E.D. Cal. 2011) ("Arbitration Order"). The Arbitration Order held in pertinent part as follows:

- Ellison was unable to demonstrate that the venue clause in the arbitration provision was unconscionable. Zurich introduced unrebutted evidence that the parties actively negotiated the terms of the deductible agreements, thereby demonstrating both that Ellison had bargaining power and that these agreements were not contracts of adhesion. The agreements therefore lacked procedural unconscionability. Ellison also failed to introduce evidence of the financial infeasibility of arbitrating in Illinois. Finally, the court determined that a challenge to the venue provision (as opposed to the arbitration clause as a whole) was properly presented to the arbitrator. <u>Ellison Framing</u>, 805 F. Supp. 2d at 1011.

3

- The Illinois arbitral venue was proper. Under Ninth Circuit precedent interpreting the FAA, an arbitrator's venue decision must be upheld unless it can be shown that "there was partiality on the part of an arbitrator, or that the arbitrator exceeded his authority, or that the award was rendered in 'manifest disregard of the law.'" Aerojet-General Corp. v. Am. Arbitration Ass'n, 478 F.2d 248, 252 (9th Cir. 1973) (internal citations omitted). Ellison failed to make the necessary showing. Ellison Framing, 805 F. Supp. 2d at 1010.
- Plaintiff's claim for $195,000.00 in improper "cost containment" fees fell within the scope of the arbitration agreement. Ellison Framing, 805 F. Supp. 2d at 1012.
- By citing California law in their papers, the parties waived the provision of the deductible agreements specifying a New York choice of law. Ellison Framing, 805 F. Supp. 2d at 1011 n. 1.

Ultimately, the court stayed the instant action, compelled the parties to arbitrate their dispute in Schaumburg, Illinois, and directed Ellison to inform the court once the arbitration concluded. The matter was then administratively closed. (Id.)

### 2. 2013 Complaints

Ellison never provided the court with notice regarding the status of the arbitration. Instead, on August 23, 2013, Ellison filed two new, identical complaints ("2013 Complaints") in the Eastern District of California against Zurich; one with this

4

court, under the previous case number (ECF No. 24); the other with Judge John A. Mendez, case no. 2:13-cv-01761-JAM-AC.

The 2013 Complaints allege, *inter alia*, that:

- The arbitration in Illinois was stayed "pursuant to State of California regulatory action against Zurich, among other issues, with regard to the form under which the out-of-state arbitration provision was set forth." (2013 Complaints 2-3.)
- In July 2013, the State of California and Zurich entered into a Settlement Agreement to resolve the regulatory action. (Id. 3.)
- Under the Settlement Agreement, Zurich waived its right to enforce the deductible agreements pursuant to which it sought $569,640.97 in unpaid deductibles from Ellison. (Id. 3.)

In the 2013 Complaints, Ellison sought declaratory and injunctive relief regarding Zurich's waiver of its contractual rights under the deductible agreements, and monetary damages of $500,000.00 for "bad faith." (Id. 3, 5.)

On September 5, 2013, Zurich filed a Notice of Related Cases in both courts, as required by Local Rule 123. (ECF No. 25.) Eight days later, Judge Mendez issued an Order to Show Cause why the action in his court should not be dismissed as duplicative of the instant action. (No. 2:13-cv-01761-JAM-AC, ECF No. 6.) In its response, Ellison claimed that the 2013 Complaint it had filed before Judge Mendez arose from conduct different from that alleged in the 2011 Complaint. (No. 2:13-cv-01761-JAM-AC, ECF No. 7.) By minute order dated September 20, 2013, Judge Mendez

determined that, good cause having been shown, he would not dismiss the action pending in his court. (No. 2:13-cv-01761-JAM-AC, ECF No. 8.) But Ellison's response to the OSC failed to address the central issue raised by Zurich's motion to consolidate: the identity of the two 2013 Complaints. Nowhere in its response (and, in fact, nowhere in its oppositions to the instant motions) did Ellison address the fact that it has filed two identical complaints in two different actions in this judicial district.

Currently pending before Judge Mendez are Zurich's motion to strike and dismiss the 2013 Complaints in that court as duplicative of the 2013 Complaints in this court, or alternatively, for an order compelling the parties to arbitrate their dispute. (No. 2:13-cv-01761-JAM-AC, ECF No. 10.) That motion is set for hearing on January 22, 2014.

### B. Standard re: Motion to Consolidate

Federal Rule of Civil Procedure 42(a) provides as follows:

> (a) Consolidation. If actions before the court involve a common question of law or fact, the court may:
>
> (1) join for hearing or trial any or all matters at issue in the actions;
>
> (2) consolidate the actions; or
>
> (3) issue any other orders to avoid unnecessary cost or delay.

Under this rule, the district court has broad discretion to consolidate cases pending in the judicial district, even if one or more of those cases is pending before a different judge.

6

<u>Investors Research Co. v. United States Dist. Court for Central Dist. of California</u>, 877 F.2d 777 (9th Cir. 1989).

The standards governing a Rule 42(a) motion are as follows:

> The critical question for the district court in the final analysis [i]s whether the specific risks of prejudice and possible confusion [a]re overborne by the risk of inconsistent adjudications of common factual and legal issues, the burden on parties, witnesses and available judicial resources posed by multiple lawsuits, the length of time required to conclude multiple suits as against a single one, and the relative expense to all concerned of the single-trial, multiple-trial alternatives.

<u>Arnold v. E. Air Lines, Inc.</u>, 681 F.2d 186, 193 (4th Cir. 1982) (cited with approval for this point by 9A Charles Alan Wright & Arthur R. Miller, <u>Federal Practice and Procedure: Civil</u> § 2383 (3d. ed. 2012)). "Considerations of convenience and economy must yield to a paramount concern for a fair and impartial trial." <u>Johnson v. Celotex Corp.</u>, 899 F.2d 1281, 1285 (2d Cir. 1990), <u>cert. denied</u>, 498 U.S. 920 (1990).

The moving party bears the burden of demonstrating that consolidation is appropriate. <u>In re Consol. Parlodel Litig.</u>, 182 F.R.D. 441, 444 (D.N.J. 1998); <u>Internet Law Library, Inc. v. Southridge Capital Mgmt., LLC</u>, 208 F.R.D. 59, 61 (S.D.N.Y. 2002).

### C. Analysis re: Motion to Consolidate

Every factor to be considered in the Rule 42(a) analysis weighs in favor of consolidation. The 2013 Complaints are identical, and therefore present identical questions of law and fact. While the 2013 Complaints and the 2011 Complaint seek different remedies, the declaratory and injunctive relief sought

in the 2013 Complaints directly implicates this court's Arbitration Order - Ellison is essentially seeking to vacate this court's referral of this matter to arbitration, in favor of a judicial determination that Zurich waived its right to enforce the deductible agreements. If such a determination is to be made, it should be made by this court; the alternative would be to leave open the possibility of either a judicial or arbitral determination regarding enforceability in this action (whether in this court, or in arbitration ordered by this court), and an inconsistent judicial determination regarding enforceability in another action. Parallel arbitral and judicial proceedings would increase the burdens on the parties and witnesses, extend the length of time required to resolve the disputes herein, and invariably drive up the parties' legal expenses. Finally, there is nothing before the court to suggest that Ellison's right to fair and impartial proceedings would be impaired by consolidation.

Ellison's principal argument against consolidation is that Judge Mendez, by vacating the OSC, determined that the 2013 Complaint did not share common questions of law or fact with the 2011 Complaint. This argument is unavailing, as there is nothing before the court to suggest that Judge Mendez made such a determination. The record, consisting of a minute order, only shows that he refused to "dismiss this action as duplicative." While Ellison's response to the OSC elaborated on the differences between the 2011 Complaint and the 2013 Complaint, that filing neither disclosed to Judge Mendez that Ellison had filed an identical 2013 Complaint before this court, nor did it provide

any explanation for the duplicative filing. In light of these omissions, one cannot read Judge Mendez's minute order as making any substantive determination as to the identity or non-identity of the two actions.

In light of the foregoing, consolidation in this court appears warranted.

## II.  MOTION TO STRIKE

Zurich moves to strike the 2013 Complaint on the grounds that, by filing this complaint, Ellison both (i) violated the stay under the Arbitration Order and (ii) effectively filed an amended complaint, in violation of Rule 15(a)(2).[2]

Striking the 2013 Complaint seems appropriate. It is axiomatic that an action may have only one operative complaint. See, generally, 6 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure: Civil § 1476 (3d. ed. 2013) ("Effect of an Amended Pleading"). And, as Zurich points out, Ellison violated the stay order by filing the 2013 Complaint. The proper course of action would have been for Ellison to notify the court as to the status of the arbitration; if Ellison contended that changed circumstances (specifically, the Settlement Agreement) meant that the parties' dispute was no longer arbitrable or that new issues were presented, it could have sought leave from the court to lift the stay.

Accordingly, the 2013 Complaint will be stricken in its entirety.

---

[2] Under Rule 15(a)(2), once the deadline for amending a pleading as a matter of course has expired, "a party may amend its pleading only with the opposing party's written consent or the court's leave."

**III. MOTION TO ENFORCE ARBITRATION ORDER**

Finally, Zurich moves the court to enforce its Arbitration Order and direct the parties to continue to arbitrate their claims and defenses.

### A. Background re: Motion to Enforce Arbitration Order

In support of this motion, Zurich has provided the declaration of its employee, one Nancy Dow. (Decl. Dow, ECF No. 26-2). Ellison provides no evidence of its own in opposition, nor has it otherwise objected to Dow's declaration. The facts set forth herein are therefore taken from Dow's declaration and the exhibits that it introduces.

On February 27, 2012, the California Department of Insurance initiated administrative proceedings against Zurich before the California Insurance Commissioner, case no. DISP-2011-00811. (Decl. Dow ¶ 4 & Exh. B.) The core allegation therein is that Zurich issued deductible agreements (the contracts that were the subject of the Arbitration Order) without first filing these agreements with the Insurance Commissioner for review.

On July 11, 2013, Zurich and the California Department of Insurance entered into the Settlement Agreement, a copy of which is attached to the Dow Declaration. The Agreement has several provisions that arguably conflict with one another, and consequently, are at issue in the instant motion. These are reproduced below.

Paragraph 13 provides in pertinent part:

> Zurich agrees that it will waive enforcement of its contractual rights under Deductible

10

>     Agreements used prior to the Start Date[3] with California Employers that require: (i) that arbitration of disputes take place in Schaumburg, Illinois, and (ii) the application of New York law to such disputes. Arbitration will take place in California and California law and venue will apply in the arbitration of such disputes (without giving effect to California conflicts of laws principles) unless the parties agree to the application of another law or venue. The foregoing waiver does not apply to any dispute involving a California Employer which (i) has been resolved by a settlement agreement signed as of the Start Date, (ii) a trier of fact in a trial or evidentiary hearing (in the case of arbitration) has rendered his or her finding as of the Start Date, or (iii) was in litigation or arbitration that is final as of the Start Date. (Decl. Dowd ¶ 5 & Exh. C.)

Paragraph 14 provides in pertinent part:

>     Zurich agrees that, for matters involving a Current Dispute . . . it will grant California Employers the one-time option either to adhere to the binding arbitration provisions in their Deductible Agreements (in addition to the waivers set forth in paragraph 13) or to litigate disputes otherwise falling within the scope of such binding arbitration provisions in a California civil proceeding, without prejudice to any party's right to commence or remove such proceeding in or to Federal court in California. As used in this paragraph 14, a Current Dispute includes any dispute or claim for which no final decision has been issued or settlement agreement signed by the

---

[3] The Settlement Agreement defines "Start Date" as "the later of (1) the date that sixty (60) days after the Effective Date and (2) the date the Deductible Agreement and Large Deductible Endorsement forms . . . are deemed approved for use in California after filing with the Department of Insurance . . . ." "Effective Date," in turn, is defined as "the date the Settlement becomes effective pursuant to the Insurance Commissioner's order approving and adopting this Settlement Agreement."

11

>parties prior to the Cutoff Date[4] and to which one of the following applies:
>
>. . .
>
>(2) Any dispute or claim for which a written arbitration demand has been made prior to the Cutoff Date, and no arbitration has been commenced; or
>
>(3) Any dispute or claim which is subject of a pending arbitration as of the Cutoff Date. (Id.)

Paragraph 19 provides in pertinent part:

>[S]ubject to paragraphs 13 and 14, the Department of Insurance will not require Zurich to waive any Deductible Agreement terms.

Paragraph 23 provides:

>Except for the express waiver by Zurich set forth in paragraph 13 and one-time option granted by Zurich in paragraph 14, nothing in this Settlement Agreement or any of its terms and conditions shall alter the contractual terms of any Zurich insurance policy, Deductible Agreement or other agreement.

Finally, paragraph 25 provides in pertinent part:

>This Settlement Agreement is not intended to and shall not confer any rights upon any persons or entities besides the Department of Insurance and Zurich. (Id.)

On August 6, 2013, Zurich's counsel sent Ellison's counsel an email offering to "either (a) proceed with the pending arbitration before [AAA], with the understanding that the venue would be moved to California upon Ellison's request, or (b) return to . . . the Eastern District of California and

---

[4] The Settlement Agreement defines "Cutoff Date" as May 1, 2013.

request that all of the parties' disputes proceed before Judge Karlton." (Decl. Dow ¶ 4 & Exh. D.) The email gave Ellison an August 13, 2013 deadline to decide. (Id.) On August 13, Ellison's counsel responded, contending that neither option was acceptable as, under paragraph 13, *supra*, Zurich had waived enforcement of its contractual rights under the deductible agreements, except as to disputes resolved by settlement, a finding by a trier of fact, or through already-concluded litigation or arbitration. (Id.) On August 14, Zurich's counsel replied, maintaining that Zurich had not waived its right to collect the amounts due by Ellison, and extending Ellison's deadline to respond to its offer by one week. (Id.) That same day, Ellison's counsel replied, reiterating his position, and contending that Zurich was not acting in good faith. (Id.) On August 16, Zurich's counsel, responded, reiterating her position. (Id.) On August 24, Ellison's counsel filed the two 2013 Complaints in this district.

### B. Standard re: Motion to Enforce Arbitration Order

Section 2 of the FAA provides that contractual arbitration clauses are "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Section 4 of the FAA permits a "party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration [to] petition any United States district court . . . for an order directing that . . . arbitration proceed in the manner provided for in [the arbitration] agreement." 9 U.S.C. § 4. If the court is satisfied "that the making of the arbitration agreement or the failure to comply with the agreement is not in issue, the court

shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement." Id.

A district court's role under the FAA is to determine "(1) whether a valid agreement to arbitrate exists, and, if it does, (2) whether the agreement encompasses the dispute at issue." Kilgore v. KeyBank, Nat. Ass'n, 718 F.3d 1052, 1058 (9th Cir. 2013) (*en banc*) (quoting Chiron Corp. v. Ortho Diagnostic Sys., Inc., 207 F.3d 1126, 1130 (9th Cir. 2000)). If these requirements are met, the FAA mandates the district court to direct the parties to arbitration. Id.

The Supreme Court has repeatedly held that "attacks on the validity of an entire contract, as distinct from attacks aimed at the arbitration clause, are within the arbitrator's ken." Preston v. Ferrer, 552 U.S. 346, 353 (2008). Accord Prima Paint Corp. v. Flood & Conklin Mfg Co., 388 U.S. 395, 404 (1967) ("[W]ith respect to a matter within the jurisdiction of the federal courts save for the existence of an arbitration clause, the federal court is instructed to order arbitration to proceed once it is satisfied that 'the making of the agreement for arbitration or the failure to comply (with the arbitration agreement) is not in issue.'") (quoting 9 U.S.C. § 4); Buckeye Check Cashing, Inc. v. Cardegna, 546 U.S. 440, 445-6 (2006) ("[U]nless the challenge is to the arbitration clause itself, the issue of the contract's validity is considered by the arbitrator in the first instance.").

////
////
////

14

**C. Analysis re: Motion to Enforce Arbitration Order**

The parties' dispute turns on whether the deductible agreements are now unenforceable, given the terms of the Settlement Agreement. In advancing its argument for unenforceability, Ellison attacks the validity of the contract as a whole, rather than the validity of the arbitration clause. It is well-settled that once a matter has been deemed subject to arbitration, the validity of the underlying contract is a question for the arbitrator, rather than for the court. Preston, 552 U.S. at 353.

Ellison does not present any sensible argument in opposition to this point. Its sole citation of substance, to Orion Pictures Corp. v. Writers Guild of Am., 946 F.2d 722 (9th Cir. 1991), is inapt. Orion stands for the proposition that "[a] district court may resolve questions about the jurisdiction of an arbitrator de novo pursuant to the Declaratory Judgment Act, and may do so even after the arbitrator has asserted jurisdiction over the dispute," so long as the party seeking a judicial determination was not the one that invoked arbitration in the first place. Id. at 725. But there is no question about the arbitrability of this matter; that question was resolved by the court's 2011 Arbitration Order. Ellison's present challenge is to the validity of the deductible agreements, a question that is unequivocally for the arbitrator – unless, pursuant to the Settlement Agreement, Ellison had opted to proceed in this court.

Zurich twice presented Ellison with the option to elect a judicial forum; Ellison declined to elect the option, and instead appears to have forum-shopped for a new judge. In light of

Ellison's conduct, this court's previous order compelling arbitration, and the numerous Supreme Court cases holding that the validity of the contract of whole is a matter for the arbitrator, it appears that this matter must be arbitrated.

One further matter requires the court's attention. On August 6, 2013, Zurich's counsel sent Ellison's counsel an email offering to "either (a) proceed with the pending arbitration before [AAA], with the understanding that the venue would be moved to California upon Ellison's request, or (b) return to . . . the Eastern District of California and request that all of the parties' disputes proceed before Judge Karlton." (Decl. Dow ¶ 4 & Exh. D.) Contrary to Zurich's counsel understanding, the Settlement Agreement does not appear to require that Ellison request a California arbitral forum; instead, it provides that "[a]rbitration will take place in California and California law and venue will apply in the arbitration of such disputes (without giving effect to California conflicts of laws principles) unless the parties agree to the application of another law or venue." (Settlement Agreement ¶ 13.) Accordingly, unless they agree otherwise, the parties will arbitrate this matter in California, under California law.

**IV. CONCLUSION**

The court hereby orders as follows:

[1] <u>Ellison Framing, Inc. v. Zurich Am. Ins. Co.</u>, No. 2:13-cv-01761-JAM-AC, and <u>Ellison Framing, Inc. v. Zurich Am. Ins. Co.</u>, No. 2:11-cv-00122-LKK-DAD are CONSOLIDATED in this

court. All future filings are to be made only in case No. 2:11-cv-00122-LKK-DAD.

[2] All hearing dates in case No. 2:13-cv-01761-JAM-AC are VACATED.

[3] The Clerk of the Court is DIRECTED to administratively close case No. 2:13-cv-01761-JAM-AC.

[4] The complaint filed at ECF No. 24 is STRICKEN in its entirety.

[5] The parties are DIRECTED to resume arbitration of their dispute, in California and under California law (without giving effect to California conflicts of laws principles) unless the parties mutually agree to an alternate venue or choice of law.

[6] The stay and administrative closure previously ordered herein remain in effect. Plaintiff is DIRECTED to inform the court within fourteen (14) days of the completion of arbitration.

IT IS SO ORDERED.

DATED: December 10, 2013.

LAWRENCE K. KARLTON
SENIOR JUDGE
UNITED STATES DISTRICT COURT